EMELIA V. CURLEY *vs.* UNITED ELECTRIC RAILWAYS CO.

ISIDORE COTE *vs.* SAME.

FEBRUARY 28, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J. These two cases of trespass on the case for negligence are before us on defendant's exceptions to the denial of its motion for a new trial in each case. The defendant contends that the verdicts are against the evidence and that the damages are excessive. All other exceptions are waived.

The cases were tried together by a justice of the superior court sitting with a jury and resulted in a verdict of $2,158 for Emelia V. Curley and of $1,300 for Isidore Cote. At the hearing on defendant's motions for a new trial, the trial court sustained the verdict in the case of Emelia V. Curley and ordered a remittitur of $500 in that of Isidore Cote. The remittitur was filed as ordered in the Cote case, and the defendant duly prosecuted a bill of exceptions in each case.

About 6 p. m., of December 31, 1931, a 1925 Ford sedan, which was being operated by the plaintiff Isidore Cote, collided with an electric car of the defendant company at the junction of Cranston and Vermont streets in the city of Cranston. Emelia V. Curley, the mother of Cote, was a passenger in the automobile. Cranston street, which runs in a general north and south direction at the place of the

accident, is about sixty feet wide between property lines. Vermont street, which is some forty feet wide between property lines at that point, enters but does not cross Cranston street from the east. A single street railway track is located on the easterly side of Cranston street. Before the accident Cote was proceeding north on Cranston street and intended to make a right-hand turn across the track into Vermont street. The electric car was coming towards the intersection on a straight rail from the north. There is an arc light, which was lighted when the collision occurred, at the northeast corner of these two streets. The headlights of the electric car and of the automobile were also lighted. Weather and road conditions were good.

The plaintiffs claim that the automobile was stopped on the car track when the collision occurred. The testimony in behalf of the plaintiffs shows that Cote started to drive across the track when the car was a considerable distance from Vermont street; that he had to stop his automobile on the track to avoid striking two men who were walking across Vermont street directly in front of him; that, while he was in this position, the car kept approaching at a fast rate of speed; and that, although he signalled for the motorman to stop, by raising his hand, the car continued to approach him at the same speed until it crashed into the left side of his automobile and pushed it some thirty-five or forty feet along the track. There was also testimony to the effect that, immediately after the accident, the motorman said to Cote: "Buddy I didn't see you."

The defendant's witnesses, who were passengers on the car, testified, in substance, that the car was moving at a moderate rate of speed and that, when their attention was attracted immediately before the accident, the automobile was in motion and a short distance in front of the car. The motorman testified that he saw the automobile stopped on the track when his car was seventy-five or one hundred feet away; that he immediately decreased the speed of the car but did not stop it as the automobile backed off and

away from the track; that this action by the driver of the automobile led him to believe that he could proceed with safety; and that, when he was eight or ten feet away from the automobile, the driver again drove on the track directly in front of the car and made an accident unavoidable.

There was a square conflict of testimony as to how the accident happened. The probabilities of the case, including the credibility of the witnesses, were undoubtedly argued first to the jury and later to the trial justice. The jury believed the plaintiffs, and the verdicts on the issue of liability were approved by the trial justice. Under our well established rule, we find no reason to disturb the verdicts on that point.

We find a different situation in both cases when we come to consider the question of damages. In the case of Isidore Cote, the evidence shows that, with the exception of a few body bruises of a minor nature, this plaintiff's only injury was a sprained ankle without damage to either bones or ligaments. Cote testified that after the accident he was confined to his house for four weeks and unable to work for two weeks more; that his doctor saw him every day for about six weeks; that he was nervous and lost weight and could neither eat nor sleep; and that these conditions still continued to trouble him. The doctor's bill was $24. He further testified that at the time of the accident he was employed as a tractor driver by the General Fire Extinguisher Company; that his pay up to about two weeks before that time was $27.50 a week; and that when he was injured he was earning $15.50 a week, because he was on short time.

The paymaster of the General Fire Extinguisher Company, who testified from the records of that company, stated that according to those records Cote was away from work for only three weeks following the accident. He also testified to the pay that the plaintiff received each week from November 7, 1931, to January 2, 1932, and from January 30, 1932, to March 26, 1932. These weekly

amounts show an average pay of $8.89 a week for the former period, and $8.31 for the latter period.

The only other item of damage that this plaintiff mentioned was his automobile, which he claimed to be beyond repair. He failed, however, to tell what he had done with it or to produce any testimony or evidence of its value. The defendant, on the other hand, showed by competent evidence that the automobile could be repaired for $59.50.

The credible evidence establishes that the financial loss to Cote was a doctor's bill of $24, three weeks pay at an average of about $9 a week and $59.50 to repair the automobile, amounting in all to $110.50. The jury gave him $1,300, which sum was reduced to $800 by the trial court, and he filed a remittitur accordingly. The verdict as reduced gives Cote almost $700 for pain and suffering. Our examination of the testimony shows that such an award is clearly not justified by the evidence and is grossly excessive. *Faltinali* v. *The Great Atlantic & Pacific Tea Co.*, 55 R. I. 438.

The plaintiff, Emelia V. Curley, suffered a cut over the left eye that required no stitching, some bruises of the body, and a contusion which produced a swelling of the right leg. She complained also of pain in the lower back, nervousness and loss of weight, sleep and appetite. The doctor testified that the back was strapped for about four weeks, the leg was bandaged for from four to six weeks, and the highly nervous condition that he found her in after the accident subsided in three or four weeks. Except for the administration of sedatives, she received no other kind of treatment. There is no testimony of injury to any bone or ligament. Mrs. Curley testified that the doctor came twice a day for about two weeks and once a day for six weeks thereafter.

The same doctor who took care of Cote attended Mrs. Curley. He testified that he saw her twice a day for the first two or three days and then once a day for some time, which she testified ended about eight weeks after the

accident. These daily visits were necessary, according to the doctor, because it was "really three months before she got a hold of herself." He also testified that she had been at his office at various times complaining of pain in the back, nervousness and inability to sleep. His charge for all services to this plaintiff was $126. In answer to questions by counsel for the defendant, the doctor testified that he had treated her for different ailments in the course of about ten years; that he could not recall definitely the nature of all the ailments because he had hurriedly left his office without his records when he was called to court, but he did remember that some five years before the accident he had performed a surgical operation upon her; and that in his opinion the pain and nervousness that she complained of was due to her injuries and not to the operation or to any physical change that takes place at or about her time in life. He did add, however, that as the symptoms were entirely subjective, he had to depend solely upon the word of the patient for their existence.

A physician called in behalf of the defendant testified that he had examined Mrs. Curley some eighteen months after the accident in the presence of her own doctor; that at that time she stated her age as forty-three years and gave him her medical history but made no mention of the operation that had been described at the trial by her doctor; that from his examination he could find nothing the matter with her; that any nervousness that she claimed to be suffering from was nothing more than what normally occurs in the period of physical readjustment at her age in life; and that, with the additional information of the type of operation that her doctor performed, he was confirmed in his opinion that Mrs. Curley's complaints were attributable to natural causes and not to any injury that she may have received in the accident.

In respect to her expenses, Mrs. Curley testified that a married sister, who was working at the General Fire Extinguisher Company, lost six weeks work to take care of

her, and that it was agreed between them that she was to pay her sister $8 a week and board for these services. The paymaster for the General Fire Extinguisher Company testified that according to his records the only week that Mrs. Curley's sister did not work was the one ending January 23, 1932. These records further showed that the sister's average weekly pay at the General Fire Extinguisher Company for the six weeks preceding the accident was $5.54, and $5.55 for the same period following the accident, including the week of January 23.

This plaintiff was in serious error in at least two instances. One was when she testified that the doctor attended her twice a day for a period of about two weeks, while the doctor testified that he visited her twice a day for only two or three days. The other was when she stated that her sister did not work for six weeks with a resulting loss of pay to take care of her, whereas the records of the General Fire Extinguisher Company clearly showed that the sister was out only one week, and that during the six weeks that she was supposed to be taking care of Mrs. Curley she received the same average weekly pay that she had received for a corresponding period previous to the accident. A fair reading of all the testimony shows that, while Mrs. Curley was undoubtedly injured and suffered therefrom for some time, she has greatly exaggerated those injuries and her consequent suffering.

In his decision on the defendant's motion for a new trial, the trial justice referred to Mrs. Curley's claim of pain and suffering but made no mention of the material contradictions that vitally affected that claim. Even then he strongly intimated that the jury's award was four or five hundred dollars more than he would have given her, but he failed to order a remittitur. The total expenses incurred by her according to her own testimony were $174, consisting of a doctor's bill of $126 and $48 to her sister for alleged nursing for six weeks. Deducting this sum from the verdict of $2,158 leaves a balance of $1,984 for Mrs. Curley's injuries

and suffering as a result of the accident. The facts and circumstances in evidence do not warrant any such sum. She is only entitled to be fairly compensated for her injuries and resulting damages. In our opinion the verdict of the jury as sustained by the trial court clearly shows a disregard of material and credible evidence which makes the verdict grossly excessive. *Faltinali* v. *The Great Atlantic & Pacific Tea Co.*, *supra*.

In the case of Emelia V. Curley, the defendant's exception is sustained, and the case is remitted to the superior court for a new trial, unless the plaintiff, on or before the fourteenth day of March, 1936, shall file in the superior court a remittur of all said verdict in excess of $1,200. In case the plaintiff shall file such remittitur, the superior court is directed to enter judgment for the plaintiff on the verdict as reduced by the remittitur.

In the case of Isidore Cote, the defendant's exception is sustained, and the case is remitted to the superior court for a new trial, unless the plaintiff, on or before the fourteenth day of March, 1936, shall file in the superior court a remittitur of all said verdict in excess of $400. In case the plaintiff shall file such remittitur, the superior court is directed to enter judgment for the plaintiff on the verdict as reduced by the remittitur.

*P. Henry Quinn, Thomas F. Cooney*, for plaintiffs.
*Clifford Whipple, Frank J. McGee*, for defendant.